# THE SUPREME COURT

OF THE

## STATE OF NEVADA.

## OCTOBER TERM, 1878.

[No. 890.]

## S. M. AND S. E. BURBANK, RESPONDENTS *v.* WEST WALKER RIVER DITCH COMPANY, APPELLANT.

INJURIES CAUSED BY THE BREAKING OF A DITCH—VERDICT SUSTAINED BY THE EVIDENCE.—The facts of the case reviewed at length: *Held*, that the evidence supported a verdict in favor of plaintiffs.

IDEM.—*Held*, that the defendant was bound to provide against such floods as had occurred within its knowledge.

IDEM—CONTRIBUTORY NEGLIGENCE.—The plaintiffs were stockholders and officers of the corporation defendant; as such they frequently urged upon the trustees the necessity of fluming the west fork of Desert creek to prevent the injury which occurred; when overruled, they offered to do the work themselves and were threatened with personal violence: *Held*, that they were not guilty of contributory negligence.

PLEADINGS—PRESCRIPTIVE RIGHT.—Where the damages were not claimed on account of the mere existence of the ditch, but were claimed on account of the careless management of the ditch and neglect of defendant to provide proper means of discharging the waters of the west fork of Desert creek into their natural channel in case of flood: *Held*, that neither the pleadings nor the evidence entitled the defendant to raise the question of prescription.

STOCKHOLDERS CAN BRING SUIT FOR DAMAGES AGAINST CORPORATION.— Where damages are claimed on account of mismanagement by the corporation against which the plaintiffs as officers and stockholders constantly protested: *Held*, that plaintiffs as stockholders could maintain the action.

APPEAL from the District Court of the Eighth Judicial District, Esmeralda County.

The facts are stated in the opinion.

*Robert M. Clarke and M. A. Murphy,* for Appellant.

I. The proofs totally fail to support the averments of the complaint.   There is no pretense of any carelessness or negligence in using the ditch; nor that the waters brought into the ditch by the defendant caused any break in the banks of the ditch, or did the plaintiffs any damage whatever, nor that the ditch was not in good repair.   On the contrary, it is shown that the ditch was ample for the use and purposes intended, and in place of carrying water upon the plaintiff's land, carried it away from them.   The damage which the plaintiffs sustained was the direct and sole act of God, and for which the law holds no man responsible.   (Wharton on Negligence, secs. 114, 115, 557, 558; 30 N. Y. 568, 639; 35 Cal. 416.)   As no negligence is shown or pretended, except such as results from the mere existence of the property, there is absolutely nothing to support the verdict and judgment.   (Shearman & Redfield on Negligence, sec. 2 and note, 6 and note; Wharton, secs. 557, 558; 34 Cal. 75.)

II. The defendants commenced their ditch before plaintiffs had their land; they have maintained and used it in the same place and manner, and with plaintiff's knowledge for more than fourteen years, and if its mere existence worked any injury to plaintiffs or their land, then such injury is prescribed against by lapse of time under the statute of limitations.   (Angell on Water Rights, secs. 205, 206, 207, 208.

III. The court erred in charging the jury that the defendant must so use its ditch as not to interfere with plaintiffs' rights.   This instruction ignored the defendant's rights of prescription.   (7 Cal. 339; 10 Id. 541; 34 Id. 75.)

*Ellis & King and D. J. Lewis,* for Respondent.

1. The verdict is for plaintiff, upon testimony competent and amply sufficient to support the verdict, and if the testimony is conflicting, the verdict must stand.   (25 Cal. 404; 16 Id. 160; 21 Id. 414; *Treadway* v. *Wilder,* 9 Nev. 67.)   It was the duty of the defendant to so manage and maintain

its ditch as that no injury should befall the plaintiffs in consequence of the neglect of the defendant. (*Richardson* v. *Kier*, 34 Cal. 74.) If it appears that an injury has happened in any way, through the intervention of man, it cannot be held to have been the act of God. (*Polack* v. *Pioche*, 35 Cal. 423; *McArthur* v. *Sears*, 21 Wend. 190; *Fish* v. *Chapman*, 2 Geo. 349; *Merritt* v. *Earle*, 29 N. Y. 115; 25 Cal. 403.) The direct occasion of this damage was the failure to flume the channel. This was negligence upon the part of the defendant. (25 Cal. 403; 34 Id. 75.) Even if the instruction states the law too broadly the case should not be sent back for another trial, unless the defendant has been deprived of some right which ought to have, or might have, legally changed the result of the trial already had. The error, if any, was harmless. (*Robinson* v. *Imp. Co.*, 5 Nev. 44; *Cahill* v. *Hirschman*, 6 Id. 59; *Caples* v. *C. P. R. R.*, 6 Id. 265; *Brown* v. *Lillie*, 6 Id. 244; *Sharon* v. *Minnock*, 6 Id. 377; *Blackie* v. *Cooney*, 8 Id. 41; *Menzies* v. *Kennedy*, 9 Id. 52; *State* v. *Donovan*, 10 Id. 36; *State* v. *Glovery*, 10 Id. 24; *Gaudette* v. *Travis*, 11 Id. 49.) There is no question of limitation or prescription in this case.

By the Court, BEATTY, J.:

This is a suit for damages for injuries alleged to have been caused by the negligence of the defendant in suffering its irrigating ditch to break and flood the lands of the plaintiffs. The complaint contains the allegations usual in such cases; the answer denies that the plaintiffs were injured; denies that the defendant was negligent, and charges that the plaintiffs were, at the time of the alleged injuries, stockholders and officers of the defendant, and as such officers were managing the ditch and specially charged with the duty of keeping it in repair.

On these issues the case was tried. Plaintiffs recovered a judgment for upwards of eighteen hundred dollars. The defendant moved for a new trial, and, the motion being overruled, it appeals from the judgment and the order denying its motion.

It is claimed by appellant that the district court erred in

refusing to order a new trial, because there was no evidence that it was guilty of negligence, or that the injury to the plaintiffs was caused or in any degree augmented by reason of its ditch; and because it was clearly shown that such injury as plaintiffs sustained was due solely to the act of God and their own culpable negligence; and because it also clearly appears that their injury was less serious than it would have been if the ditch had never been dug.

We think, however, that there is not only some evidence but a preponderance of evidence in favor of the plaintiffs on all these points.

There was evidence sufficient, we think, to prove the following state of facts: Defendant's ditch heads in the West Walker river, and extends for a distance of several miles in an easterly direction along the slope of the hills which lie to the south of that stream. It is so constructed as not only to divert water from the river, but also to intercept all the water flowing from the hills to the south of it. Instead of being connected by flumes across the ravines and watercourses by which it is intersected, it is made to dam up their channels and receive all the water flowing therein. Near its eastern or lower end it crosses two branches of Desert creek, known as the " East fork" and "West fork." These streams or channels head in the mountains to the south of Walker river, and, before the construction of defendant's ditch, emptied into that stream. Ordinarily they are either dry or contain but little water, but when there are heavy snows, followed by rains in the mountains, they are converted into torrents, and either branch brings down more water than the ditch can possibly carry, so that it must inevitably overflow or break. It has frequently broken, sometimes at one point, sometimes at another. Two or three years before the trial, there were waste-gates in the ditch at the points where it receives the east and west forks, but the waste-gate at the west fork having washed out, it was not replaced when the break was repaired. Instead of putting in a sufficient waste-gate to draw off the waters of the west fork in case of freshets, the embankment was made solid, and so high and strong that it has not broken since.

The consequence has been that in times of high water the ditch has broken near the crossing of the east fork, where the embankment is weaker, and discharged the flood from both branches of Desert creek upon the lands of the plaintiffs, which are situated on the east fork and below the ditch. It was proved that in their natural channel the waters of the west fork could not have reached the plaintiff's lands, and that those of the east fork alone would have caused them no material injury. But at four different times during the years 1875 and 1876 the flood from both branches was poured upon them through a break near the crossing of the east fork, and it is not disputed that they were damaged at least to the extent found by the jury. We think it clear upon these facts that the injury resulted from the negligence of the defendant, in failing to keep a sufficient waste-gate at the crossing of the west fork. The ditch not being of sufficient capacity to carry the waters of that stream when it is high, it was the duty of the defendant to provide a means for discharging them through their natural channel. Instead of doing so, they were diverted by the ditch and turned upon the plaintiff's land.

But it is contended that the floods of 1875 and 1876 were wholly unprecedented, and such as could not have been anticipated or provided against, and consequently that the injury to plaintiffs was solely due to the act of God.

It will not be necessary to decide whether the defendant would have been absolved if the floods had been of unprecedented violence, for the fact is otherwise. Witnesses now living in the valley testify to even greater floods having occurred within the last twenty years, and moreover, the ditch has been demonstrated to be insufficient on several occasions since its completion, notably, at the time the waste gate at the west fork was washed out. If the defendant was not bound to provide against unheard-of floods, he was at least bound to provide against such as had occurred not more than three years prior to the construction of its ditch. It had abundant warning in every way. The plaintiffs, as stockholders and officers of the company, frequently urged upon the trustees the necessity of fluming the west

fork, in order to prevent the very results that have ensued, but they were always overruled by an adverse majority, and when they offered to do the work themselves, they were threatened with personal violence if they attempted it. This disposes of the charge of contributory negligence made in the answer. It is true the plaintiffs were president and foreman respectively of the defendant, and one of them a trustee at the time a part of the injury occurred. But it is very clearly shown not only that they had no power, but were expressly forbidden by a majority of the trustees, sustained by a majority of the stockholders, to provide any means for discharging the waters of the west fork into their natural channel in case of a flood.

An attempt was made at the trial to show that the plaintiffs had been guilty of negligence in other respects. It was proved that at the time of the floods they refused to open the waste-gate at the east fork; but it was not shown how the raising of that gate would have helped them, and so far as we can see, the only effect of it would have been to hasten their ruin. There was evidence also that the break occurred at the point where the plaintiffs had a box for drawing water from the ditch for irrigating purposes, and an attempt was made to show that by the improper construction or arrangement of this box the embankment was weakened and caused to break. The jury, however, under instructions drawn by the defendant, and quite as favorable as it was entitled to ask, found that there was no contributory negligence, and we think they were amply justified in concluding from the evidence that the ditch must inevitably have broken at the east fork in spite of everything that the plaintiffs could have done. In fact, it is a part of the appellant's argument that no human power could have prevented the ditch from breaking somewhere, and all the evidence shows that the embankment at the west fork was too strong and high to be overflowed or broken.

It was proved that the ditch below the east fork had a steeper grade, and consequently a greater carrying capacity than above that point. From this it is argued that it must necessarily have conducted away from plaintiffs' lands more

water than it brought to them, and consequently that they were less injured than they would have been if there had been no ditch. As long as the embankment of the ditch was unbroken, no doubt it did carry away more water than it brought down to the east fork, but when the water it brought from the west fork, uniting with that of the east fork, washed out the embankment, it is probable that very little if any water continued to flow down the ditch to the eastward. It found a wider channel and steeper grade down the bed of the east fork.

These are all the points made on the evidence, and they are, as we have endeavored to show, without merit.

It is next claimed that the district court erred in charging the jury that time could not confer a right upon the defendant to injure the plaintiffs.

No prescriptive right of any sort is pleaded in the answer, but on the trial it was proved that the defendant's ditch was completed in 1864, and has been constantly in use during the irrigating season ever since.

It seems to have been contended in the district court, as it has been here, that the injury to the plaintiffs was caused solely by the mere existence of the ditch, coupled with the act of God in producing the floods. Hence it was argued that, since the defendant could not be held responsible for the act of God, if it could show a prescriptive right to maintain its ditch, its defense would be made out. Counsel therefore contends that the instruction referred to was erroneous, and deprived it of the benefits of one of its defenses.

It is unnecessary to decide whether the instruction would have been erroneous in the sort of case supposed. It is sufficient to say that neither the pleadings nor the evidence in this case entitled the defendant to raise the question of prescription. Damages were not claimed on account of the mere existence of the ditch, but on account of careless management of the ditch, and the negligence proved was the failure to provide a means of discharging the waters of the west fork into their natural channel below the ditch, whereby they were diverted into the east fork. This was the plaint-

iff's case, and there was not a particle of evidence tending to prove that the defendant ever at any time exercised or claimed the right so to divert the waters of the west fork. It is true the danger has been impending ever since the west fork was securely dammed up and the waste-gate taken out, but no right of action accrued to the plaintiffs until the injury was done, and when it was done this action was commenced. Conceding that the instruction of the court may have been erroneous, it is a sufficient answer to the argument of counsel to say that its utmost effect was to take from the jury the question of prescription, and that is what ought to have been done.

The court also instructed the jury, in effect, that the plaintiffs were not precluded from maintaining this action by reason of the fact that when the injury occurred they were stockholders of the corporation.

The appellant does not deny that in general a corporation may be sued by its stockholders, but it is claimed that when an injury results to a stockholder, from the mere existence of the property of the corporation, it would be unjust to allow him to sell his stock and sue for damages.

This also presents a question which is not involved in the case. As has been shown, the injury to plaintiff did not result from the mere existence of the ditch, but from mismanagement, against which the plaintiffs constantly protested. We think that under the circumstances they had an undoubted right to maintain the action. And it makes no difference that they sold their stock before bringing suit. The purchaser of the stock alone, if anybody, can complain on that score.

The other points made by appellant are but a repetition of those which have been discussed, and are equally without merit.

The judgment and order appealed from are affirmed.